## McDAVIT *vs.* PIERREPOINT.

1. Where a party seeking specific performance of an agreement for the conveyance of lands, claims an allowance for the value of a certain tract to which he alleges the defendant has no title, he must show a title out of the defendant.

2. Where such complainant was in possession of the tract under the defendant, at the date of the agreement, as against him the title must be taken to be in the defendant, until the contrary appears by positive proof.

McDavit *v.* Pierrepoint.

3. A claim for deduction on account of the want of possession of a part of the premises, refused, because the words in the agreement for conveyance, describing that tract as "a small piece near the said road *in the tenure of Mrs. Whiteford*," was a declaration that the defendant's estate was that of landlord or reversioner, and the fair construction and operation of the contract is to convey, subject to the estate which she might have in the premises.

4. The complainant's knowledge that Mrs. W. had occupied the lot for many years, at the date of the agreement, was sufficient notice to put him upon inquiry, and he must be charged with the notice he would have had if he had made inquiry.

5. Though a verbal understanding cannot alter a written agreement, yet if the agreement without it did not warrant the construction given to it, a court of equity would not compel specific performance of it in a manner contrary to the understanding between the parties at the time.

6. Specific performance will not be decreed, when it is against equity under the circumstances of the case.

7. The gross neglect on part of the complainant in the payment of interest and principal pursuant to the contract, and his laches in not tendering payment and bringing suit for nineteen years after he should have paid the whole consideration, and then not until an ejectment was commenced against him, would deprive him of the right to performance, if the defendant was not willing to perform.

---

Argued on final hearing upon bill, answer, replication, and proofs.

*Mr. Kays*, for complainant.

*Mr. Linn*, for defendant.

THE CHANCELLOR.

The complainant asks for the specific performance of an agreement to convey lands in the county of Sussex, entered into in writing between him and the defendant, in March, 1843. The agreement is admitted by the defendant, and he does not refuse to perform it by conveying the property; but the complainant claims an allowance for the value of seventeen acres of the tract, to which he alleges that the defendant had no title, and for the value of the loss of the occupation of a part of the tract known as the Whiteford lot, which was

in the possession of Mrs. Whiteford at the time of the contract, under a valid lease for her life, and who occupied it until her death, which occurred in 1863, about four years before the filing of the bill.

The written contract was to convey two tracts, one of one hundred and eighty-two acres, and another tract adjoining it of seventeen acres, and described them as "the two tracts making the farm known as the McDavit farm, and now in the tenure of the said Thomas McDavit, and a small piece near the said road in the tenure of Mrs. Whiteford." The complainant had lived on this farm with his mother and as tenant, since 1821; both occupied as tenants under John Rutherford, from whom Mrs. Whiteford held by lease for life. She had occupied this small parcel for the whole time. The complainant agreed to pay for these tracts the sum of $2500 on or before the 1st day of April, 1848, with interest annually on the 1st day of April, in each year. It was also agreed between the parties to the agreement, that McDavit should enter into possession of the premises, and hold the same until he should make default in the performance of the covenants therein contained on his part.

On the 1st of April, 1844, McDavit paid $150, the interest then due, and $500 on the principal. After this he never paid the interest as stipulated. On the 1st of April, 1848, the interest was in arrear $250, and the remaining $2000 of the price was due, and should have been paid. He made irregular payments of interest, but never in full until March 28th, 1855, when he made a payment of $600, which exceeded the interest then in arrear by $250; he never after this made any payment. Pierrepoint commenced an ejectment to obtain possession in 1867, and this suit was brought to restrain the defendant, and compel specific performance.

As to the seventeen-acre lot, no title is shown out of the defendant. McDavit was in possession of it under him at the date of the agreement, and as against McDavit the title must be taken to be in Pierrepoint, until the contrary appears by positive proof. No proof is offered, except a deed from

Morris and Linn to McDavit, in 1836 ; but it is not shown that they ever had any title or possession. McDavit, under Pierrepoint, was in adverse possession. There is no ground for deduction on account of the seventeen-acre lot.

As Mrs. Whiteford is now dead, there can be no claim for deduction on account of want of title to that lot; the only claim made is for a deduction on account of the want of possession. She lived and held possession eighteen years after the contract.

I think that under the circumstances the complainant must be charged with knowledge of the lease to Mrs. Whiteford for life, independent of the testimony of Mr. Rutherford. He knew she had been occupying the lot for more than twenty years—that it was and had been for all that time her home. He had notice enough by this to put him upon inquiry, and must be charged with the notice he would have had if he made inquiry. But the testimony of Mr. Rutherford puts this matter beyond doubt. It shows that the complainant knew of the lease to Mrs. Whiteford, and agreed verbally to take the deed, subject to her lease, and that a reduction was made in the price on account of this lease. The agreement states the premises to be in the tenure of Mrs. Whiteford. This is a declaration that she held of the defendant by some title, that the defendant's estate was that of landlord or reversioner, and that the fair construction and operation of this contract is to convey, subject to the tenure or estate which she might have in the premises. The agreement that he should have possession must be construed in reference to this—that the possession was to be such as a landlord or reversioner could give of leased premises. He would have been entitled to the rent, if any, and to the control that a landlord has to prevent waste, and for other purposes. By the fair construction of this agreement, this is all the possession to which McDavit was entitled of the Whiteford lot. The verbal understanding cannot alter the agreement; but if the agreement, without it, did not warrant the construction given to it, a court of equity would not compel specific performance of it in a manner con-

trary to the understanding between the parties at the time. Specific performance will not be decreed where it is against equity under the circumstances of the case. It is a matter above all others that requires fair dealing by the complainant. The construction above given to this agreement was that given to it by both parties at the time. McDavit testifies that it was his understanding of it, until he consulted counsel, shortly before the commencement of the litigation in this matter. It would not be equitable to decree specific performance with a deduction for the want of possession of the McDavit lot.

The gross neglect on part of the complainant in payment of interest and principal, and his laches in not tendering payment and bringing suit for nineteen years after he should have paid the whole consideration, and then not until an ejectment was commenced, has been such as would deprive him of the right to this relief, if the defendant was not willing to perform. He has submitted himself to the judgment of the court in this matter, or a decree would not be made; and, if made, it must be made on equitable terms only.

There must be a reference to ascertain the amount due on the contract, and a decree for conveyance, upon payment of that amount, and the costs of the defendant.